The next case is Wells v. Cooper. Counsel? Thank you, Your Honor. May it please the Court, Counsel? My name is Mike Podesky. I represent the appellants Matt and Amy Cooper. The facts are very straightforward, Your Honors. This is a dog bite case, Illinois Animal Control Act. And there's really not that much of a dispute as to the facts. Trenna Wells is the sister of my client, Matt Cooper. Trenna was visiting Amy Cooper over at Cooper's house. The Coopers owned a dog named Hank. He was a lab husky mix, a young dog. I think he was only about three years old when the accident happened. The dog, everyone agreed, this dog was extremely friendly, got along very well with the Coopers' children, never showed any aggressive tendencies to anybody, never snapped at anybody, never growled. Just a very friendly dog, liked to play. Well, Trenna was visiting with Amy, and then Hank, usually kept in the back, gets out, and he runs out in front of the guys. Sure enough, he gets out on the Morrow Road. Amy notices this. Amy runs out, says, Oh, Hank's outside. Hank's got out into the street. Says, Oh, my God, Hank's been picked. So Trenna's aware that Hank has been struck by a vehicle, and Hank is starting to walk back into the Coopers' yard. At that point, the women are yelling, Hank, Hank, come back. Trenna goes out to the dog, who she admits was injured, was hit by a car, probably in a great deal of pain. And what she wants to do is prevent Hank from going back out into the street, because initially the dog started to walk back towards the women, but then he kind of turned around and looked like he might go back into the street. So what Trenna does is she goes up to this dog, and she says she kind of puts her arms around him. Now, there was some, a little bit of dispute in the testimony. She told one of her doctors that she grabbed the dog on the stand at trial. She said she didn't grab the dog. She just kind of put her arms around Hank. But what she wanted to do was prevent Hank from going back out into the street. So, and she admitted on the stand that she said, yeah, the dog, she knew he was hit by a car, probably in a great deal of pain, probably significantly injured as well. So she's got her arms around the dog. The dog dies just a few seconds later. It's been critically injured. It was a significant injury from being struck. And in the process of the dog sort of falls to the ground, it ends up biting her thumbs. That's what her testimony is. So for the defense of this case, there's really, there's two issues that we brought up in the case. One was provocation. The other was this idea of custodianship or ownership of the dog. Now, the Animal Control Act is kind of interesting, and this is an interesting case for, not too many dog cases are, but I think this one is for several reasons. The Animal Control Act defines owner in four different ways. It's not just somebody that has a property interest in the dog. I mean, it was undisputed that the Coopers owned the dog. They bought the dog, actually trying to help them find Hank. She knew somebody down in Granite had the pup. Anyway, but the Coopers purchased the dog, and they cared for it, they fed the dog, and they kept it at their house. They were the property owners. But under the Animal Control Act, an owner is not just the property owner. It can be a person having the right of property in a dog, or who keeps or harbors a dog or other animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on any premises occupied by him or her. So the cases say, well, there's four different types of people can be owners. For the purpose of being defendants, for sure. Right, right. Okay. But also it works as claims. I know you're leading to that. That's the interesting thing. Right. The problem in the case is this. Under the IAPI, I think it's section 100, under the animals section, there's five jury instructions. Two of them deal with the common law. We're on an issue here. One of them is the Domestic Animals Running at Large Act. Instruction for that. One of them is the Fence Act. Only one instruction is the Animal Control Act, and that's the basic portion of the statute that says an owner is liable for injuries to a person peacefully conducting himself in a place where he may lawfully be unless the person provokes the animal, and then there's the definition of provocation. So that's the only jury instruction that's provided in the IAPI. But what we have here was we raised the issue of Trina acting as custodian of the dog at the time of the injury, and I know this court is very familiar with Animal Control Act cases and lots of cases and, you know, is the injury out of proportion to the provocation, all that kind of stuff. This is a unique case because this is the only case that I'm aware of. Maybe the plaintiffs will tell you one that they found, but when we have an adult person who knowingly lays hands on a critically injured dog, a person they know the dog's been hurt, they're going to go ahead and handle the dog or prevent the dog from moving, try to exercise control of the dog. So that to me, anyway, this is kind of an unusual, kind of a unique case.  And was she acting, was Trina acting as custodian of Tank at the time of the bite? And if she was, she could not recover. Exactly. So whose burden of proof was it that she was acting as custodian? Oh, it would be her burden of proof. And so is it an affirmative defense? I'm sorry, what was that? Is it an affirmative defense then? I don't know. Because it would defeat, I mean, even if she proved all of these other things that, you know, there was no provocation, she was bit, that the dog was under custody of her brother and sister-in-law and so forth, that would still be a defense to that claim. I'm not so sure if it's an affirmative defense. I mean, that's a good question because I'm not sure I've seen it. Well, the only time I've seen it that I've seen it in the cases is where it's come up and there's been a summary judgment on the issue. I don't, I have not, I'm not aware of a specific case that says, you know, this is an affirmative defense, and I don't think the IPI tells you one way or another whether it's an affirmative defense. Well, my question is, you know, if this is a total defense to the claim, which appears to me that that would be your argument, why wasn't that all in the burden of proof instruction that you submitted and was given by the court? Well, because we didn't have the instruction that she could not recover. We had eight and nine, the instructions, eight and nine, if they're not allowed. Well, if you're wanting to instruct the jury that she cannot recover if the proof shows that she's exercising custodial control or whatever of the dog, you know, why is that in a separate instruction and not part of the burden of proof instruction? Because that's what sets out what the jury has to find for the plaintiff to recover or not recover. Right, right. You see what I'm getting at? I understand what you're saying. Maybe they, we were kind of working with a blank slate here, and maybe I didn't do the best job with the jury instructions. What I tried to do was submit a jury instructions, eight and nine, that went to the issue. I mean, yeah, I mean, I agree with the judge. I mean, it would all be not an IPI deal. I mean, yeah, I mean, it would have been much better to do it that way. I didn't think to do that. I didn't think to do that. I tried to get an eight and nine. He didn't give me eight and nine. My guess is that since Judge Harrison didn't give me Tenant's eight and nine, he wasn't going to allow that in the burden instruction anyway because that would have been part of eight. But anyway, number eight says, a person having control of an animal cannot recover against the animal's legal owner for injuries sustained while the person has such control. And then number nine was, nothing requires a person to exercise care or custody of an animal for a set period of time to meet the definition of owner. And those both come straight out of Illinois case law, the Hessel case, the Van Ploegh case that I've cited in the brief, never been questioned, never been challenged, still good law. And that's all we're saying is, you know, we should have had jury instructions on these issues with a better burden of proof instruction, I guess. But we didn't. We didn't get the jury instructions. I mean, that was the issue because let me make one other point on this. The way the IPI is set up with only this standard language out of the statute, we could have had a case where, potentially, if Trenna doesn't visit the Coopers that day and Amy's just there by herself and she sees Panko out there, and if Amy goes ahead and tries to do the same thing that Trenna did, Amy could sue her husband, Matt, under the Animal Control Act and say, well, wait, you know, we have separate checking accounts, you know. This wasn't my dog. That was his dog. You know, he owned the dog. We could have someone that has a property interest, allegedly a property interest, just like her husband, she could sue her husband under just the IPI instruction, but that's not allowed. If you're an owner of a dog, you're not allowed to recover under the Animal Control Act. So that's a potential that we have because of just the limited nature of the IPI. Same case, we could have had an issue of fact of, you know, does Amy own the dog or does Matt own the dog? Is it the husband's dog or the wife's dog? Big factual issue, and, you know, the kids testify in the whole nine yards. But the point I'm trying to make is that would be a significant factual issue if that's what occurred. Here we had, you know, Matt's sister Trenna come over, and she's the one that we alleged that, hey, you know, she exercised as a custodian. And that's a factual issue for the jury to decide, you know. And they argued, you know, hey, you know, she did anything that someone would try to do. She tried to save the dog. Well, yeah, I mean, maybe someone would try to do that, but, you know, this is a statutory cause of action. It's not a negligent cause of action. At the time of the instruction in Congress, did Judge Harrison say there's not enough facts here to submit to the jury, any issue about whether she was exercising control over the dog? No. I think what he decided was, you know, we had one – he gave us the custodian, the whole definition of ownership out of the statute, and he thought it was duplicative of the – and that's an issue, too, that the plaintiff's right. Well, you don't have a transcript of the jury instruction conference. Well, the way Judge Harrison likes to do it is he has this informal thing, and you talk about it. It's not on the record. Then he goes on the record, and you just, you know, bang, bang, bang. He likes to do it efficiently. And that's kind of how he does it. Now, did I waive that issue? Well, let me just say this much. I filed a summary judgment on the issue. I supplied HESL. I supplied Van Cue. I supplied the jury instructions at the jury instruction conference, and I followed up with it in post-trial motion. I don't know how he could possibly waive the issue that Judge Harrison was unaware of it or, you know, I'm presenting it for the first time in the appellate court. The trial court didn't have a chance to consider it. I mean, I don't know what else I could do for you. I mean, you know, I don't want to be rude to the judge. You know, if that's the way he wants to do his jury instruction conference, I'm not going to tell – you know, maybe I should have told him otherwise, but, you know, I'm trying to get instructions, so I'm trying to, you know. Anyway, it didn't work. So what I'm trying to say, Your Honors, is we had ownership as an issue of fact. You know, the jury was told, you know, someone can be a custodian of a dog, but the problem with it was they weren't told that if they found that Trina was a custodian that she doesn't recover. Now, maybe she would have won the case anyway. I mean, I don't know. But what I do know is the jury was not given an instruction or not fully instructed to deal with this issue of ownership or acting as a custodian of the dog. They just weren't given the instructions 8 and 9. And if they had, you know, who knows what they would have done. I'm just saying it's an issue of fact, and that's what Judge Harrison, you know, decided when we had our summary judgment hearing, and I brought up the Hessel case and the Van Kloot case. So we just don't know that. So I was asking for a new trial on that issue. They only got really half of the issue presented. I mean, the plaintiff said, well, you know, you got this definition of custodian, and, you know, that's good enough. We could say she's the custodian, but if the jury doesn't know that if she is the custodian or acting as a custodian she doesn't recover, that doesn't do anything. I mean, it's just sort of useless. And then the other issue, you know, provocation. I asked for J&OB on this. I know it's a fact issue, you know, but I think the jury might have been confused as to this issue because, again, you know, the plaintiffs argued, well, you know, she wanted to save this dog. She didn't want the dog to get hit again. My guess is the jury might have looked at it as more like a reasonable person standard, but as this court actually held in a case that actually changed the IPI for the dog bite statute, it's this reasonable dog standard. So the issue was, you know, how would an animal in similar circumstances respond? So we're dealing with the dog. Runs out on the street, gets hit by a pickup truck. He's critically injured. He dies just seconds after this incident here. We have a human, goes over to the dog, and, again, there's a little bit of dispute whether she grabbed it. She tells the doctor she grabbed it. She said she just put her dog around it. The point is she makes contact with the animal. Now, I had a dog, and I think we all have experience with dogs. The dog that's been critically injured, run over by a car, probably is not going to be in the best mood, suffering under extreme pain like this dog was. I'm trying to admit it. If she just stood there, if she didn't put her hands on the dog, she doesn't get hit. This doesn't happen. So we're supposed to put ourselves in the mind of the dog. Well, that's what the jury's done. Actually, yeah, in the strength of the IPI. And determine. I understand, but we humans are supposed to decide what a reasonable dog would do. But that's what the IPI is. It's the reasonable dog standard. What would a live dog in some respect? A dog dog. Well, if you have a dog. Some people are cat people, I get that. Some people are dog people. But that's what the jury instruction. And if it was a cat, it would be the reasonable cat standard. So it would be everybody agrees that this particular dog was a friendly dog, never bit anybody. No dispute about it. That can't be considered at all. It's what would a reasonable dog do after being struck by a truck. Yeah, terminally injured, too. And somebody lays hands on it. Well, my guess, what can I say? We move for some rejection on provocation, too. I know that's an initial fact, and I respect that. But the point I'm trying to make is, you know, what would the reasonable dog do? It seems to me the only rational conclusion is the dog's going to bite somebody. I mean, that's what critically injured animals do. It can be the friendliest dog from day one. But when this dog is extremely seriously injured, like Tank was, and that's what he did. I mean, he's never bitten anybody before. Trina Wells cared for him for a week while the Coopers were on vacation at one point. Got along great with the dog, happy dog. I mean, he didn't have this sort of, you know, schizophrenic personality or something. The reason why he bit her was because she laid hands on him. He didn't run up to her after getting hit by the truck and, like, snap at her, try to bite her, try to growl her. The undisputed evidence was he was walking, and he wasn't, you know, growling or sneering or he didn't. He wasn't suddenly become this angry animal. He bit because he was laying hands on the dog, and that's just what animals do now. You know, so we asked for JNOV on that question. I'm just going to ask one more silly question. I take it there was no evidence introduced on what a reasonable dog would do under these circumstances. No expert was called that this is what happens. No dog experts. No. So that's, you know, that's what we argued. So I'll leave it at that, Your Honors. We asked for the JNOV on provocation, and then we asked for the new trial with regard to the jury instruction issue. Thank you. Thank you, Counsel. Counsel? Excuse me. Your Honors, may it please the Court and Counsel. My name is Daniel Jones, and I, along with Co-Counsel Lindsay Rakers, represent the Plaintiff Appellee Tranna Wells in this matter. I'd like to reserve five minutes of our time for Ms. Rakers to address the provocation issue, and I'm going to be discussing the jury instruction issue. Your Honors, this Court should affirm the rulings of the lower court in this matter. Our Illinois Supreme Court has clearly stated that the post-trial motion specificity rules regarding jury instructions are clear and explicit. A litigant must provide the reviewing court with a transcript of the jury instruction conference, establishing that the argument he advances on appeal was advanced with the lower court below. Without this, the Supreme Court has said, the litigant is barred from raising the jury instruction issue in the reviewing court. More recently, in 2006, that very procedure was approved by the First District Appellate Court in the Weber v. White case that's cited in our brief. In this case, the defense has failed to tender any transcript of any jury instruction conference in which they established that the arguments they made today was made during the trial during the jury instruction conference. As such, the defense has waived that issue before the court today. And although the defense can talk about, well, we met the spirit of the rule and we argued at this stage and we argued at that stage, that's not the rule. The rules from the Supreme Court are very clear. The litigant must provide a transcript of the jury instruction conference or the litigant is barred. If the court looks at the Weber case, which we've cited in our brief, it's a wrongful termination case involving retaliatory discrimination. But the court first begins by noting that the Brown case is dispositive. And then the court notes that the only thing that is before the appellate court are the jury instructions that were actually read to the jury and the appellant's version of their jury instructions. And that's all that was provided. And the court said, based on Brown, we cannot say that the jury instruction issues were properly and sufficiently specific enough to preserve the issue, and the issue is waived. If the court looks at the jury instruction conference and the record on appeal, and they're found at pages 279 through 286 on the record, there's four sentences dealing with proposed eight and nine from the defense. The court says, I have defendants eight in my possession. I'm denying me. I'm sustaining the objection. I have number nine, and I'm sustaining that one as well. And that's all the discussion that are had by eight and nine. And counsel has stood up here today and said, well, what could I do? This is the way the judge does it. I didn't have any opportunity. Well, if you read the rest of the jury instruction conference, that's not true. He knew exactly how to preserve this record on appeal because he does it later in the jury instruction conference. When it comes to plaintiff's jury instruction number five, the judge says, I'm going to take that up, and he says, Judge, I'd like to be heard on this. And he advances his argument, and he preserves the record on appeal, and the judge ultimately denies his position, but it shows he knew exactly how to preserve this record. Did Judge Harrison in any way restrict either counsel's ability to raise objections when you went on the record for jury instructions? Judge, I can't answer that one. I wasn't there. There's nothing on the record that says that anyway. That's exactly right, Judge. So defense was aware how to preserve an argument for appeal. It knew how to make a record, and it simply didn't do so, and it's waived that argument here today. However, even if we assume arguendo that the jury instruction issue was somehow preserved, the trial court properly ruled on the jury instructions relating to the custodian issue. The trial court has great discretion in selecting the appropriate jury instructions, and there is no abuse so long as when the evidence is taken as a whole, the instructions fully, fairly, and comprehensively apprise the jury of the relevant law, and that comes from the Schultz case by the Illinois Supreme Court. The Weber Court has also told us that a new trial is to be granted when the court refuses a proposed jury instruction and only then when the refusal has caused serious prejudice to a litigant's right to a fair trial. So what are the rules here? Illinois Supreme Court Rule 239A starts us off, and it says that whenever there's an IPI instruction on point, it is supposed to be given. Is there any IPI instruction that would tell a jury that if the plaintiff had custody of the dog or whatever, she could not recover? There is not one, Judge. However, the only jury instruction on point is 110.04, and it defines honor and it defines provocation. Now, that jury instruction was amended as recently as June of 2009, and no other jury instructions have been given to us by the committee. If we look at the notes on 110.04 from the committee, they tell us that they should get an appropriate issues instruction and they should get an appropriate burden of proof instruction along with 110.04. So that's the direction the trial court has, and so we need to look at what issues and what burden of proof instructions were given to the jury here or to the judge here. And when we look at the issue instruction, the judge decided he would give defendants number 10. It was a version of IPI 20.01, and it includes the sentence, the defendants further claim the plaintiff was acting as the dog's custodian when the bites occurred. The judge gave that jury instruction over the plaintiff's proposed number 10, and the trial court elected to use that version because it had the issue of ownership and custodian there in one place as opposed to two different places. What burden of proof instruction was given? The court went with defendants number 12. It's their proposed version of IPI 21.02 on the burden of proofs issue. So pursuant to what's mandated by 110.04, they got the issues instruction they wanted. They got the burden of proof instruction they wanted. Was the question of custody or custodian argued to the jury? It was, judge. If you look in the record of unappeal, pages 399 to 400, the defense makes that argument. It says Trina Wells was the custodian, and if you look at the Animal Control Act, she can't recover. So that argument was made, and the jury simply didn't buy it. But the defense got more than the burden of proof instruction and the issue instruction it wanted. It also got defendant's instruction number 7, which was the definition of an owner, which is taken from 2.16 of the Animal Control Act. And it says that an owner means any person having the right of property in the animal or who keeps or harbors an animal or who has it in his care or who acts as its custodian. Again, the custodian argument is there, and it can be made. So the defense got the IPI instruction that's on point, the issue instruction it requested, got the burden of proof instruction it requested, and it got the definition of owner that it requested. They were given the ability to make their argument about the custodian, and in fact they did. They made the argument that you cannot recover if you are the owner of the dog, and the jury simply ruled in favor of the claim. Now, the court is required not only to file Rule 239A, but it's also required to follow other mandates in this matter. It's also required to make sure that when an IPI instruction is appropriate that it does not give non-IPI instructions, and that comes from the Poboda case that I've quoted in our brief. It's a case from this court from 1996, and it tells us when the IPI instructions correctly and adequately charge the jury, the use of non-IPI instructions in conjunction with the IPI instructions is inappropriate. The Padova court also tells us that another mandate for the court is that the trial court is not to act in a manner in which jury instructions are repetitive or give undue influence or undue emphasis to a certain issue, and so here the trial court balanced out its issues. It gave the defense the chance to make its custodian argument by giving it all those instructions that it asked for, but it also didn't overemphasize or repeat issues as well and declined to give 8 or 9. Finally, 8 and 9 are at best an incomplete statement of the law, and as such, the trial court was correct in refusing to give those jury instructions. If you look at 8 and 9, they would greatly expand the definition of an owner under the Act. This court has ruled that the purpose of the Act is to encourage tight control of animals to protect the public from harm, and because the mandate is to protect the public from harm, it provides a strong incentive to prevent one's animals from harming others. When one speaks of a custodian under the Act, one must talk about the relinquishment of control before one can be a custodian. An adult who is standing on a sidewalk and prevents some child from walking out into the street doesn't become the parent of that child, particularly if the parent is standing right there. Similarly, one who stops a dog from going into the street doesn't become the owner of the dog, again, when the dog's owner is standing right there, and that's because there's been no relinquishment of control. Did you argue to the trial court that instructions 8 and 9, I guess it is, that were rejected, that there wasn't sufficient evidence in the case to justify them, that there's nothing here to really show that she had any control over the dog? I think that argument was made at different stages, say in the summary judgment stage. I don't know that it was made at the jury instruction court. Okay, so nobody said anything about these two instructions at the time the court refused them on the record? On the record, they did not, Judge. Okay, so we really don't have anything to determine from that record why the judge rejected them? We don't, and that's why it's incumbent upon the defense to make that record. Yeah, I understand. That's a different argument. It is, and that's why. The facts here show Amy Cooper was in control of that dog all day. Matthew and Amy Cooper admitted they were the owners of the dog. Trenna Wells stated she was never the owner of the dog, and everyone agreed with that. But for a couple of times when she sat for the dog, she didn't house the dog, she didn't feed it, didn't provide veterinary care. The day of the incident, Amy goes over to, or Trenna goes over to Amy's house, and the first thing that happens is the dog escapes out into the backyard, and Amy is the one that goes and gets it and brings it back in the house. Later, the dog keeps bothering Trenna, so Amy picks up the dog and puts it in a crate. The dog keeps yippering and yammering, and so Amy takes the dog and puts it outside. When the dog gets struck by the car, it's Amy that notices that, and both of the ladies go outside, and Trenna goes and tries to attempt the dog, and there's no evidence on the record during the trial at any point that she actually put her hands on the dog. She said, I clasped my hands around the head of the chest of the dog. Amy never did anything to tell her not to touch the dog, to scream that the dog was injured, didn't do anything. Amy was always in control of her dog. And that's the difference between this case and the cases cited by the defense. If you look at the Ban Flu case, which they've talked about, the plaintiff there was working for a dog-sitting agency named the Critter Sitters, and the plaintiff hired the Critter Sitters to watch the dog, and that's what happened when the plaintiff got injured. She went over to the owner's house to feed the dog and got attacked and was injured. Similarly, if you look at the Hassell case, that case involves where the plaintiff was providing in-home health care for the dog owner, and the dog owner says, would you mind walking my dog? And the plaintiff says yes and pulls up the leash, the dog's on the leash and tugs her, and she gets injured. And so in both of those cases, there's an item of relinquishment of control and acceptance of that control by the plaintiff, and that's when the courts say, no, you can't recover. If this matter was to be resolved in favor of the defense and they wanted to plead that Trina was the custodian of the dog, the court's right. It should have been pleaded as an affirmative defense, and it wasn't. And the burden of proof instruction that they offered should have mentioned that the defense has the burden of proof on trying to prove some issue. They didn't offer any such affirmative defense. The jury was not apprised of any sort of affirmative defense. And so the trial court presented with 110.04 and its mandate to not provide any other IPI instruction and its mandate to not overemphasize instructions properly refused 8 and 9. This idea of relinquishment, though, is also seen in another case that didn't get mentioned in any brief. It's the Frost v. Robave case from the first district, the 1998 case. And in that case, it's kind of a complex fact pattern. The owner of the dog lived on the third floor and had a business on the second floor. And while the owner is walking his dog up to the third floor, the plaintiff, who also lives on the third floor, opens up his door, and his dog rushes out and the dogs get into it, and the plaintiff gets injured while trying to break the dogs up. The plaintiff sues the business and not the owner, but sues the business, claiming that the business was the owner of the dog. And summary judgment ends up getting granted by the first district appellate court. And it says, there's no evidence here that the business was the owner of the dog. There was no relinquishment of control. And the case court uses that language, relinquishment of control, in order to be a keeper or a harborer of the dog. Here there was no relinquishment of control, and Trentel Wells was never the owner of this dog by any of the definitions in the statute. Based on that, we'd request this court to affirm the lower court's decision. Thank you. Thank you. Counsel? May it please the court, your honors, counsel, my name is Lindsay Rakers, and I tried Trenta's case over a year ago now in Madison County, Illinois. And while we appreciate the opportunity to be here today, we're ready for this to be over for Trenta. I want to first answer your question, your honor, about the jury conference. And we were not restricted in our arguments. While only a portion of it was held on record, we did have a full jury conference prior to that. We both objected to each other's jury instructions, and Judge Harrison did not restrict us, so I wanted to address that. There's a question of fact here as to whether or not provocation existed. And because it's a question of fact, the verdict can only be reversed if it was contrary to the weight of the evidence. That's based upon both the Beggs and Thompson case, which I've cited in the brief. The provocation jury instruction defined this for the jury, and that's all we can do. The jury was given 110.04, and the defendant pounded that jury instruction all through trial. We can't tell the jury how to rule. Now, defendant's position is that Tank bit plaintiff because he was reacting to a mortal wound. But we have to look at the whole circumstances here. Why was the dog hit? The dog was hit because at least two times that day he got out of the yard, ran into the street, and was hit by a car. Well, hit by a car on one occasion, but got out of the yard on two occasions. This is exactly what the Act was designed to do, to protect the public. We no longer have to show that the dog was violent. No one disputes that Tank was a nice dog. But the reason the Animal Control Act became law was to eliminate this requirement of violence. The purpose of the Act is to encourage tight control of animals in order to protect the public from harm. Again, that's the Beggs case, citing Wilcoxon. In Beggs, the court noted that the defendant should have expected that plaintiff would have looked around the property while she was looking at it to see if she wanted to purchase it. There was a component of foreseeability there. And here, the same thing. It's certainly foreseeable that visitors are going to come to your house. It's certainly foreseeable that if you don't keep your dog on your property, in your yard, your dog can run out into the street and get hit by a car. Is it possible that this jury felt that this is exactly what this Act was designed to do? Yes. Is the verdict contrary to the weight of the evidence? Absolutely not. Let's talk about the provocation specifically. Again, a question for the jury because reasonable people disagree on this issue. It's the jury's role to weigh the evidence. We see that in the Guthrie case, the Lockett case, and the Maple case. And we can only overturn that if the verdict isn't based on any evidence. Now, the defendant argued this in a motion for summary judgment, a directed verdict, a motion for a new trial. And every time, Judge Harrison said that this was a question for the jury. Now the defendants say they want a new trial on the issue. And I submit to you that they can't just keep trying until they get the result that they want. Okay. The instruction given to the jury is 110.04. It says the term provoked means any action or activity, whether intentional or unintentional, which would reasonably be expected to cause a normal animal in similar circumstances to react in a manner similar to that shown by the evidence. So we're back to the reasonable dog deal, right? So it was up to the jury to decide what a reasonable dog would do under the same or similar circumstances. That's right. And your argument is they decided. They made their decision, Your Honor, and if we do what the defendant is suggesting, not only does it take this argument away from the jury, this decision away from the jury, but it would also mean that we hold everything as provocation. This is discussed exclusively in the Robinson case, which is a Fifth District case, that reminds us that not everything can be provocation. It goes through a list of questions or a list of cases that answer this question. The Robinson case also reminds us that if the provocation was unintentional, which if anything in this case, Trenna certainly didn't mean to provoke the dog. If it was unintentional, you have to look at the dog's reaction and whether or not that was proportionate to what happened. Counsel says that all reasonable dogs, if they're hit by a car, will bite. I beg to differ with that. This is a question for the jury. The Nelson v. Lewis case tells us that we have to look at both of these things, and so the dog's response does matter here. In the Robinson case, a young girl screamed and was attacked by a dog. What if a dog, as the Robinson court points out, this court, what if a dog is scared of bald people? A bald person walks by and the dog attacks. We can't hold that everything is provocation. Robinson reminds us that the purpose of this act is to make it easier for the plaintiff to recover than under common law. The quote from Robinson, if provocation could be established merely by showing that an animal's attack resulted from some outside stimulus and was not merely spontaneous, which is what defendant wants, a plaintiff would almost never be able to prevail, and we cannot accept that. So let's look at this analysis. We've got the Smith case that tells us that saying hello and petting a dog certainly isn't provocation. We have the Mesa and the McAvoy case, which are cited in my briefs, and we also have examples of provocation, such as pushing or kicking a dog, the Cyworth case, going into an area where a dog is protecting and eating, jumping on an animal's back. Counsel spends great time in his brief on the Forsyth case. Your Honors, this case isn't Forsyth. The facts don't fit. Trina gently tried to prevent Tank from running back into the street. She did not do anything near jumping on the back of an unsuspected animal. Forsyth, the very case that this defendant relies on, is a Fourth District case, and it is specifically disputed by Robinson, a Fifth District case. I guess I'm up. Thanks. Counsel? Very briefly, Mr. Judge. On this issue of the jury instruction, a transcript, and we made a record, we did make a record, I presented defendants 8 and 9 to Judge Harrison at the jury instruction conference. Obviously, what I said to the judge is not what was presented to this court, but we presented it to the judge in the summary judgment motion. That's the case, that's our position, that's our defense. We presented it again at the jury instruction conference, and my exact words discussing those two cases aren't there, but they come back again in the post-trial motion. Are the cases cited on the jury instruction? Absolutely. It's not an IPI? Not an IPI, the Forsyth, or not the Forsyth, but those other two cases, I cited it to the judge. I just want to mention one thing about the Brown and the Weber. Those were in the context of a post-trial motion, where the jury instructions were not properly discussed, brought to the trial court's attention as to why the correct jury instructions were not given. In other words, they were very vague, very non-specific post-trial motion, while the judge gave the wrong instruction. So then when the case goes up on appeal, there's a much more specific, elaborate argument as to why the jury instructions were wrong. And so what the Supreme Court did in Brown and the First District and Weber said, well, look, you know, there's nothing here that suggests that you told, the appellant told the trial court the same argument that you're giving to the appellant court. That was the whole point of the jury instruction conference and the rule of specificity in the post-trial motion. Judge, I mean, like I said, I mean, I know that, you know, we don't have my exact words to Judge Harrison because it was a very de minimis transcript, but we presented these arguments to him before, during, and after the trial. No surprise, same argument, same argument is here today, same cases as today. So this case does not fit within Brown or the Weber case.  The jury was not fully and accurately instructed here. Like I said before, the cases say there can be an issue of fact as to ownership of the dog. Well, that's fine, but if you have an issue of fact as to ownership of the dog or if someone's acting as a custodian, there's not enough there in the IPI to fully instruct the jury. There needs to be some additional jury instructions so the jury can make a decision of ownership or, in this case, acting as a custodian. The time issue, the control issue, and what we offered the court for the jury instructions comes straight out of good Illinois case law because, again, the jury was not fully instructed because we had a factual issue that was not provided for in the IPI. And I guess the Supreme Court, you know, committee had other things to do than look at dog bite cases, and I get that, but what I'm trying to say is sometimes you have to go off the menu, and this is a case where we needed to do that. And there was this argument about, well, you know, a person is not the custodian. You're not the custodian of a child. If the kid's, you know, standing on a street corner and you're standing there and you're going to stand and potentially go into the street and get hit by a car. Well, no, you're not the custodian necessarily, but if I put my hands on somebody else's kid to prevent him from going out into the street and get hit by a car, I'm acting as a custodian. I'm not committing a battery. This is not my child. I have no right to put hands on another person's child, but I'm acting as a custodian to prevent the child from maybe getting hit by a car as a safety thing. It's the same thing here because, again, the statute does not say someone that's a custodian of a dog. It's acting as a custodian of a dog. That's a very significant point I'd like to make if you're acting as a custodian. But, again, it's a factual issue for the jury to decide. You know, did I try to argue that? Well, yeah, I did. I didn't give my jury instructions, but I tried to win the case as best I could. And, yeah, I told the jury, hey, you know, she's the custodian. She can't recover. Well, you know, I tried to make as best argument as I could and I tried to be good with the jury, but I'm not the judge and I'm not the guy that has the jury instructions. The jury is instructed to follow the jury instructions given. I can argue until I'm blue in the face, but I'm not the law. I'm just the guy that's trying to advocate a position. The jury was not told that if, in fact, she was acting as a custodian that she can't recover. That's just how it is. I don't see how my trying to argue really changes the fact that we didn't have the appropriate instructions here. And then I understand this court took issue with the foresight on the provocation issue. But what we have here, I mean, this court noticed that if it's an intentional act, there can be provocation. And, Your Honors, this was an intentional act. This stuff about relinquishing control or taking control, the plaintiff decided, made a conscious decision to take control of herself by putting herself in harm's way to prevent this animal, this dog, from going out into the street. She made the decision to take control of the dog. She acted as a custodian, and I think the jury should have been fully instructed. Thank you very much. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.